UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MOHAMED AHMED HASSAN ABDALLAH OMRAN | CIVIL ACTION NO. 14-cv-2426 |
| VERSUS | JUDGE HICKS |
| STEVE PRATOR, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Mohamed Ahmed Hassan Abdallah Omran ("Plaintiff") is a federal prisoner who was briefly held as a pretrial detainee at the Caddo Correctional Center. He complains that his First Amendment rights were violated because the jail did not provide him halal food to accommodate his Muslim religious dietary practice. He names as defendants Sheriff Steve Prator, Commander Robert Wyche, Food Service Director Ardise Hicks, and Chaplain Whitaker. Before the court are Motions for Summary Judgment (Docs. 46 and 48) filed by Plaintiff and Defendants. For the reasons that follow, it is recommended that Plaintiff's motion be denied and that Defendants' motion be granted.

**Relevant Facts**

Federal immigration agents attempted to place Plaintiff on a flight back to his native Egypt, but Plaintiff refused to cooperate with efforts to board him on a plane. He screamed and yelled that he was being kidnapped and told pilots of each plane that he intended to be disruptive, which caused the pilots to refuse to allow him on board. The United States

Attorney then indicted Plaintiff with two counts of failure to depart. Plaintiff, who insisted on representing himself at his jury trial, was convicted and sentenced to six months imprisonment. U.S. v. Omran, 14-cr-00035.

During the time Plaintiff awaited trial on his federal charges, he was housed as a pretrial detainee at the Caddo Correctional Center ("CCC") from late April 2014 until early February 2015 (just over nine months). He is now housed in the Natchitoches Parish Detention Center.

Plaintiff alleges that, upon his arrival at CCC, he sent a written request to Chaplain Whitaker in which he stated that he was a practicing Muslim and would like to be provided with his religious diet. Plaintiff alleges that he did not receive a reply. He then sent a kite to Commander Wyche in which he stated that he was a Muslim and had to eat either halal food or kosher, whichever was available. The staff response was: "We provide pork-free diets for our Muslim population." Plaintiff then filed an administrative grievance and complained that his Muslim religious diet is much more than a pork-free diet. He asked to be provided halal or kosher food. The first-step response was that the jail was in compliance with Department of Corrections policy, which is to provide a diet for religious purposes that is as simple as possible and conforms as close to the regular diet as possible. The response concluded, "This is a pork-free facility which satisfies the majority of our Muslim population."

Plaintiff sought second-step review, and Commander Wyche responded with information provided by Food Service Director Hicks regarding what foods are forbidden by

the Islamic diet. His conclusion was that the complaint had no merit because the facility "serves meals that meet the dietary tenants (sic) of the Islamic faith." Plaintiff sought a third step review. That final response repeated that the jail did not serve any pork products. The grievance was denied. Plaintiff complains in his complaint and his motion for summary judgment that the Muslim religious diet is much more than just a pork-free diet, and he complains that Commander Wyche and Director Hicks are not properly qualified to make a decision regarding an appropriate religious diet.

Commander Wyche offers an affidavit and a copy of the jail's religious diet policy. He testifies that CCC provides alternative means to satisfy the religious needs of its small Muslim population. Those alternatives include pork-free and vegetarian diets, early breakfast and special sack meals for late eating during Ramadan, and access to publications and facilities to accommodate religious services and studies. Wyche submits information regarding permitted halal foods, which include pasta and grains, vegetables, dairy products not made with animal rennet, and meat and poultry slaughtered according to Islamic dietary law. Rabbi Dr. Jana L. DeBenedetti provides an affidavit regarding the requirements of a kosher diet. One of its basic principles is the total separation of meat and dairy products, which requires separate sets of dishes, utensils, cookware, and separate preparation areas for meat and dairy.

Food Services Director Ardise Hicks testifies in an affidavit that he stated in response to an interrogatory that the average cost of a kosher meal, not including the cost of separate preparation and equipment, was approximately double the cost of a non-kosher meal. He

states in his affidavit that, after additional research, he now believes the average cost of providing a pre-packaged halal/kosher meal at CCC would be approximately eight times higher per meal than the cost of a regular inmate meal. That would not include the cost associated with separately storing, refrigerating, and readying for serving the meals. He states that the current food service facilities at the jail are not sufficient, in terms of size or equipment, to accommodate the separate areas necessary for halal or kosher meals.

Commander Wyche offers similar testimony that providing separate facilities would require significant and costly expansion of facilities and the number of food service personnel, for which the current CCC budget would not be adequate. The outsourcing of such special diet requests would still require significant and costly expansion of refrigerated storage space, as well as extra equipment for preparing and serving. He states that CCC houses between 1,100 and 1,500 inmates, mostly pretrial detainees, who eat three meals per day. He expresses concern that attempting to accommodate special requests such as Plaintiff's beyond the pork-free and vegetarian options now offered, would be contrary to the notion of a simplified food service for a fluid jail population and could stir jealousy and resentment among inmates if it was perceived that some received better food service.

**Analysis**

    **A. Summary Judgment**

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A genuine dispute of material fact exists when the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013) (quoting Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505 (1986)).

Where the plaintiff bears the burden of proof at trial, the moving defendant satisfies his initial burden by demonstrating an absence of evidence to support the plaintiff's case. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). The burden then shifts to the plaintiff to go beyond his pleadings and show by competent summary judgment evidence specific facts showing that there is a genuine issue for trial. He cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. Celtic Marine Corp. v. James C. Justice Companies, Inc., 760 F.3rd 477, 481 (5th Cir. 2014).

### B. Declaratory and Injunctive Relief; Moot

A prisoner's transfer to another facility "render[s] his claims for declaratory and injunctive relief moot." Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive and declaratory relief based on exposure to asbestos were mooted by transfer to another prison). See also Cooper v. Sheriff, Lubbock County, 929 F.2d 1078, 1084 (5th Cir. 1991) (claims for injunctive relief based on denial of food at prior jail were moot). Plaintiff asks for an injunction based on the possibility that he might someday be housed again at CCC, but he does not articulate any particular facts that suggest there is a realistic likelihood of that happening. The mere possibility that Plaintiff might some day be transferred back to CCC "is too speculative to warrant relief." Herman, 238 F.3d at 665.

### C. First Amendment Claim

Plaintiff's complaint also prays for compensatory and punitive damages in the amount of $20,000. He bases his claim for damages solely upon the First Amendment and 42 U.S.C. § 1983. The Fifth Circuit in <u>Udey v. Kastner</u>, 805 F.2d 1218 (5th Cir. 1986) addressed the First Amendment claim of a federal prisoner who asked to be provided with a diet consistent with his religious beliefs. He primarily requested organically grown produce washed in distilled water. The federal prison officials declined the request, the prisoner refused to eat the food provided, and the prisoner was force fed through nasal tubes. The Fifth Circuit expressed concern about the undue cost and administrative burdens that could be caused by the proliferation of special religious diet claims. Judgment for the prison officials was affirmed.

The court reviewed a case more similar to this in <u>Kahey v. Jones</u>, 836 F.2d 948 (5th Cir. 1988) when a Muslim prisoner asserted that her religion prevented her from eating products containing pork or any food cooked or served in or on utensils that came in contact with pork or by-products. Prison officials responded by providing a protein substitute whenever pork was served with a prison meal. Some dishes, like beans, were prepared both with and without pork. Completely fulfilling the prisoner's request would have required special food and individualized processing and containers to completely avoid pork-contamination.

The Fifth Circuit affirmed summary judgment for prison officials with citation to <u>Udey</u> and after application of the recent decision in <u>Turner v. Safley</u>, 10 S.Ct. 2254 (1987)

that provided a test for assessing a prison regulation that impinges on an inmate's constitutional rights. Turner directs a court to consider (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it, (2) whether there are alternative means of exercising the rights that remain open to the inmates, (3) the impact that accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources, and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests. Turner, 107 S.Ct. at 2262.

The analysis of the Turner factors in Kahey applies to a great extent in this case. The Court found with respect to the first factor that the prison intended to provide inmates balanced, uniform meals with limited substitutions to allow a simplified prison food service rather than a full-scale restaurant. Without denigrating the significance to the inmate of a special diet, the Court stated that the prisoner acknowledged that not all Muslims adhere to the same diet, and she was not deprived of other free exercise rights regarding her religion. With respect to the third factor, the impact of accommodation on others and prison resources, the Court noted the understandable reluctance of officials to provide special storage facilities, utensils, and preparation efforts, which could be complicated by other special diet requests from diverse religions. And, if other prisoners were not similarly accommodated, they could perceive the plaintiff was being favored, which would adversely impact prison morale. As for alternatives at *de minimis* cost, the Court found that purchasing, storing, and preparing food for one prisoner out of hundreds would impose more than *de minimis* cost on the

prison. The factors warranted summary judgment for the prison officials.

A First Amendment claim by a Jewish prisoner who sought a kosher diet was dismissed on summary judgment in Baranowski v. Hart, 486 F.3d 112 (5th Cir. 2007). Prison officials submitted evidence that kosher meals were very costly in comparison to the other meals served to prisoners in the Texas prison system. Prisoners were allowed to select a regular tray, a meat-free tray, or a pork-free tray. Supplemental items were provided if the inmate did not choose to eat meat or pork. The Court looked to Udey and Kahey and affirmed the dismissal of a First Amendment claim based on the denial of kosher meals. It stated that the Fifth Circuit "has already ruled that prisons need not respond to particularized religious dietary requests to comply with the First Amendment." Baranowski, 486 F.3d at 122. See also Mathis v. Brazoria County Sheriff's Office, 2011 WL 3648101 (S. D. Tex. 2011) (summary judgment granted to local jail that temporarily held federal pretrial detainee and did not provide kosher meals).

The analyses in the cited decisions[1] support summary judgment for Defendants.

---

[1] The parties have also cited Moussazadeh v Texas Dept of Criminal Justice, 703 F.3rd 781 (5th Cir. 2013), in which the Fifth Circuit reversed summary judgment for prison officials in a kosher meals case. That case is distinguished because (1) it addressed a claim under the RLUIPA and Plaintiff's complaint relies solely on the First Amendment and (2) it involved the statewide Texas prison system that already provided kosher meals at one institution and addressed whether it was lawful to require the prisoner to pay for his kosher meals when sent to another institution for disciplinary reasons. Also, the Fifth Circuit affirmed summary judgment on both First Amendment and RLUIPA claims in Baranowski, which involved a claim more similar to this one. Finally, "[a]n inmate is not entitled to monetary damages under RLUIPA for a suit brought against a correctional officer in his individual capacity." McCreary v. Richardson, 738 F.3d 651, 655 (5th Cir. 2013).

Officials at the local jail involved in this case, which has a revolving population of pretrial detainees, has attempted to accommodate the dietary needs of any Jewish or Muslim prisoners by not serving any pork products in the jail, which avoids problems with service of pork or cross-contamination of other foods. There will almost certainly be inmates such as Plaintiff who will be housed there from time to time who have religious preferences for additional limitations or requirements regarding their diet, but jail administrators have offered reasons including budget and morale that entitle them to summary judgment on Plaintiff's First Amendment claim.

Defendants have also raised a qualified immunity defense, which means they are not liable in damages for actions that do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Kinney v. Weaver, 367 F.3rd 337, 349 (5th Cir. 2004. To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Id. at 349-50. The law of the Fifth Circuit, discussed above, did not clearly establish that the what jail officials did in this case violated Plaintiff's constitutional rights, so they are also entitled to qualified immunity from Plaintiff's damages claim.

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 46) be denied and that Defendants' Motion for Summary Judgment (Doc. 48) be granted and that all claims against all Defendants be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 9th day of July, 2015.

Mark L. Hornsby
U.S. Magistrate Judge